C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
            :
WALTER HURDLE,                     :
            :  **MEMORANDUM**
          Petitioner,    :  **DECISION AND ORDER**
            :
     - against -    :  13 Civ. 6862 (BMC)
            :
MIKE SHEAHAN, Superintendent of Five :
Points Correctional Facility,         :
            :
         Respondent.   :
            :
------------------------------------------------------------ X

**COGAN, District Judge.**

      Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254. He was convicted of assault charges stemming from an altercation with the police. He obtained reversal on appeal of the most serious charges, and now seeks review of one of the remaining charges. He alleges four points of error, but they distill into two – a Batson challenge, and a claim that with the most serious charges having been vacated, their "spillover" impact on lesser charges should have required a dismissal or a new trial on those charges as well. I hold that the state court decision rejecting the Batson claim was neither contrary to nor an unreasonable application of any Supreme Court authority, and the "spillover" argument is procedurally barred. The petition is therefore denied.

## BACKGROUND

      Four police officers, including Sergeant John Pagnotta, were on patrol in a drug-prone area in an unmarked police car. Pagnotta saw petitioner sitting in a truck parked across the street

from where the police car was driving.  The police car pulled alongside of petitioner's car, and then moved in front of it in a blocking position.  Pagnotta exited the police car, approached petitioner's truck on foot, and, after a verbal exchange, directed petitioner to exit the truck.  Instead, petitioner floored the gas pedal, hitting the police car in front of him, which swung to the side of petitioner's truck and crushed Pagnotta between the two vehicles.  Petitioner continued to accelerate, dragging Pagnotta with him for 10 or 20 feet as he remained stuck between the truck's door and door jamb, until Pagnotta was flung free from petitioner's truck when petitioner made a right turn.  Pagnotta was grievously injured; petitioner voluntarily surrendered the next day.

Petitioner was charged with four counts:  (1) Assault in the First Degree; (2) Assault on a Police Officer; (3) Assault in the Second Degree; and (4) Reckless Driving.  (The first two of these counts will sometimes be referred to below as the "top counts," and the last two as the "bottom counts.")  The jury convicted him on all four counts, rejecting his testimony that he did not believe that Pagnotta and his associates were police officers and that he thought he was being set up.  He was sentenced to concurrent terms of twenty years for the first degree assault; fifteen years for the assault on a police officer; seven years for second degree assault; and one year for reckless driving.

On appeal, petitioner raised five points in his represented and *pro se* briefs: (1) the prosecutor had exercised a peremptory challenge of one African-American venire person based on race, in violation of Batson v. Kentucky, 476 U.S. 79 (1986); (2) the evidence was legally insufficient to sustain the conviction for first degree assault because it did not show "depraved indifference to human life," a required element of Assault in the First Degree under N.Y. Penal L. § 120.10(3); (3) the evidence was legally insufficient to sustain the conviction for assault on a

2

police officer, N.Y. Penal L. § 120.05(4), because an element of that crime was that a police officer had to be engaged in a "lawful duty" at the time of the assault, and Pagnotta had acted unlawfully in stopping petitioner; (4) prosecutorial misconduct before the grand jury; and (5) to the extent any of petitioner's arguments were unpreserved, ineffective assistance of trial counsel for not preserving them.

Prior to determining the appeal, the Appellate Division issued an order finding that petitioner had made a *prima facie* showing of a Batson violation during jury selection and that the trial court had erred in not proceeding to the second and third steps of the Batson inquiry. The Appellate Division reasoned that petitioner had demonstrated a *prima facie* showing of discrimination because the prosecutor had used a peremptory challenge to excuse a black woman who was a retired New York City police officer, but had not challenged a white male retired police officer. See People v. Hurdle, 99 A.D.3d 943, 952 N.Y.S.2d 297 (2nd Dep't 2012). It remanded the Batson issue to the trial court to hear and report on whether a Batson violation had occurred, and held the appeal in abeyance. On remand, the trial court conducted a hearing and thereafter rendered a written decision. It held that the prosecution had met its burden of showing a race-neutral basis for the challenge, and that there was no discriminatory intent.

Upon determining the appeal on this expanded record, the Appellate Division rejected petitioner's Batson claim. It held: "The Supreme Court's determination that the explanations provided by the People for exercising a peremptory challenge to a black female venireperson were not pretextual is entitled to great deference on appeal and will not be disturbed since it is supported by the record." People v. Hurdle, 106 A.D.3d 1100, 1101, 965 N.Y.S.2d 626, 628-29 (2nd Dep't ), leave to appeal den., 22 N.Y.3d 956, ___ N.Y.S.2d ___ (2013), corrected order, __ N.Y.3d __, ___ N.Y.S.2d ___ (Nov. 18, 2013).

However, with regard to petitioner's challenge to the top counts (the first degree assault count and the assault on a police officer count), the Appellate Division reversed petitioner's conviction and dismissed both counts. As to the first degree assault charge, it held that "there is simply no 'valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion' that the defendant acted with depraved indifference when he caused the injuries to Sergeant Pagnotta." Id. at 1103, 965 N.Y.S.2d at 630 (citation omitted). As to the assault on a police officer charge, the Appellate Division held that "the police lacked reasonable suspicion, which is required to make a car stop," and, thus, the evidence was legally insufficient to show an essential element for proving assault on a police officer: that Pagnotta "was engaged in a lawful duty at the time of the assault by defendant." Id. at 1103-04, 965 N.Y.S.2d at 631 (citation omitted).

Both sides sought leave to appeal the respective adverse holding against them to the New York Court of Appeals. For the first time, in connection with his leave application, petitioner asserted that the bottom counts on which he still stood convicted (second degree assault and reckless driving) should also be reversed due to the "spillover" effect of the jury having considered the top counts. As cited above, the New York Court of Appeals denied both applications for leave.[1]

Petitioner's habeas corpus petition renews the Batson challenge that he raised in the state court. He also contends that once the Appellate Division determined that the evidence was

---

[1] There is some ambiguity in the Court of Appeals' orders, although it seems clear that leave to appeal was denied. It entered an "Order Denying Leave," which listed petitioner as the appellant, on October 18, 2013. That form order said that the "appellant's application" for leave was denied. It then issued the same form order, entitled "Corrected Order Denying Leave," which listed the State as the appellant, on November 18, 2013. Since the "Corrected" order did not vacate the earlier order, it appears that both sides' leave applications were denied in these two orders, and the use of term "Corrected" may have been in error.

4

insufficient for the top counts, it "should have decided whether erroneous submission of those counts irreparably impaired my defense on the remaining assault count," and that without the two top counts, he would have had "the right to request a reasonable justification defense."[2]

Additional facts will be set forth below as necessary to address each of petitioner's points of error.

## DISCUSSION

**I. Batson claim**

Since the Appellate Division decided this claim on the merits, the standard of review on federal habeas corpus is defined by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). That statute provides for habeas corpus relief only if the state court's adjudication of the claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). Moreover, a state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies federal law to the facts of the case "in an

---

[2] Petitioner has two other claims. His second ground for relief is that as a result of an alleged finding by the pretrial suppression court, the prosecutor should not have been permitted to argue that Pagnotta was performing a lawful duty and the assault a police officer charge should have been dismissed. Petitioner's fourth ground for relief is that the trial court improperly instructed the jury on "lawful duty." Both of these claims are denied as moot since the Appellate Division dismissed the assault on a police officer charge on the ground of legal insufficiency.

5

objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005).

The Supreme Court has clarified that the AEDPA standard of review is extremely narrow, and is intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, __ U.S. __ , 133 S. Ct. 696, 708 (2013) (quoting Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 786 (2011)). State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, __ U.S. __ , 131 S. Ct. 1305, 1307 (2011) (quoting Renico v. Lett, 559 U.S. 766, 767 , 130 S. Ct. 1855, 1862 (2010)), and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. This standard of "no possibility" of disagreement among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law. Moreover, the Supreme Court has expressed a lack of patience with lower courts that view its pronouncements as permitting a substantial measure of flexibility in applying this standard. See Parker v. Matthews, __ U.S. __ , 132 S. Ct. 2148 (2012).[3]

---

[3] Harrington and Cavazos v. Smith, __ U.S. __ , 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" The Harrington/Cavazos standard may not quite require "judicial incompetence," id., but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," 131 S. Ct. at 787, it certainly comes close. The Second Circuit has noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, 664 F.3d 20 (2d Cir. 2011) (reversing its earlier decision granting habeas relief upon consideration of Cavazos).

It is a violation of a defendant's rights under the Equal Protection Clause of the 14th Amendment for a prosecutor to use peremptory challenges against a prospective juror or jurors solely on the basis of race. Batson, 476 U.S. at 89, 106 S. Ct. 1712. In Batson, the Supreme Court established the procedure to determine if the prosecutor has violated these rights. The process has three steps. First, the defendant must make a "prima facie" showing that a violation has occurred based on the relevant facts and circumstances the defendant proffers. Id. at 96–97. Second, if a defendant makes this showing, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Id. At this second stage, "[i]t does not matter whether the prosecutor presents worthy reasons; the Federal Constitution requires only that the prosecutor not strike a juror because of the juror's race." Edwards v. Superintendent, Southport C.F., No. 09 cv 274, 2013 WL 3788599, at *18 (E.D.N.Y. July 19, 2013) (citing Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam)).

At the third stage, "the court must then determine whether the defendant has carried his burden of proving purposeful discrimination." Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969 (2006). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, 514 U.S. at 768, 115 S. Ct. 1769. Moreover, on federal habeas corpus review, "a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record." Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001). This is because such a finding attracts the provisions of 28 U.S.C. §2254(e)(1), which states that "a determination that a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts this burden "by clear and convincing evidence." In

7

addition, "[t]he AEDPA standard of review of the state trial judge's factual determination about . . . Batson issues is even more circumscribed and deferential" than the narrow standard of review of the state courts' legal determinations under AEDPA. Robinson v. Smith, No. 09 cv 8222, 2011 WL 1849093, at *13 n. 20 (S.D.N.Y. May 17, 2011).

The issue of petitioner's *prima facie* case is not before me.[4] My review is limited to whether petitioner has overcome the presumption of correctness as to the trial court's finding, and whether the Appellate Division's rejection of petitioner's claim was contrary to or an unreasonable application of Supreme Court precedent.

Petitioner cannot come close to meeting the difficult standard that applies here. First, there is no procedural infirmity with the trial court's findings. It issued a reasoned decision setting forth the basis for crediting the prosecutor's explanation. That is all that was required procedurally, for a "judge need not engage in 'a talismanic recitation of specific words in order to satisfy Batson.'" Messiah v. Duncan, 435 F.3d 186, 198 (2d Cir. 2006) (quoting Galarza, 252 F.3d at 640 n. 10). Indeed, the Second Circuit has upheld Batson determinations on much less than we have here, finding that "[a]s long as a trial judge affords the parties a reasonable opportunity to make their respective records," the trial court may express a Batson ruling on the credibility of the race-neutral explanation in a "clear rejection or acceptance of a Batson challenge." Messiah, 435 F.3d at 198. Here, we have an unequivocal and reasoned rejection of the Batson claim after a full opportunity for both sides to state their positions.

---

[4] The Appellate Division's ruling that petitioner had demonstrated a *prima facie* case appears to have been based on a state law rule which does not require any kind of pattern of racially-suspect strikes for a defendant to satisfy his burden. See Hurdle, 99 A.D.3d at 944, 952 N.Y.S.2d at 299. Federal law, in my view, would not find a *prima facie* case based merely on the fact that a white male retired police officer was seated and a black female retired police officer was not, especially where two black females had already been seated. See Batson, 476 U.S. at 96–97. Although a pattern may not be a *per se* requirement for a federal Batson violation, consideration of "all relevant circumstances" means something more than a single, partial comparable.

8

More importantly, as a matter of substance, the trial court recognized that virtually all of the circumstantial evidence supported the prosecutor's explanation. The only fact that petitioner could offer to support his objection was that which gave him his *prima facie* case – that the prosecutor had challenged a black female retired police officer but had seated a white male retired police officer. At the reconstruction hearing, however, the prosecutor explained that the prospective juror who she had challenged was no ordinary retired police officer. Upon retiring from the police department, the prospective juror had taken a job as a "compliance officer" in an adult detention facility. Her job was to ensure that employees of the facility followed the facility's rules. Because of this, the prosecutor thought the juror was comparable to an internal affairs officer within a police department. Given one of the main issues in the case – whether Pagnotta had acted lawfully in his encounter with petitioner – the prosecutor thought that someone who criticizes corrections personnel for a living might not be the most favorable juror to seat in a case like this. The trial court accepted that argument and found the prosecutor credible, holding that the record supported the prosecutor's belief that the prospective juror "harbored a level of disillusionment, disaffection or hostility to the police which made her undesirable to the People as a juror in the case." Cf. United States v. Thomas, 320 F.3d 315, 320 (2d Cir. 2003) (noting that a trial judge may express a credibility finding by "confirm[ing] the accuracy of the prosecutor's explanation"). Indeed, this reason, by itself, would probably be sufficient to preclude habeas corpus review of the trial court's decision to accept the explanation.

But there was more to the trial court's decision. The prospective juror in question said that despite having been on the police force for twenty years, she emphatically, in the prosecutor's view, asserted that she had no friends from the force. This caused the prosecutor some concern about the prospective juror's attitude towards police generally. That concern was

increased when defense counsel asked the prospective juror whether it would concern her to sit for a high-profile trial involving severe injuries to a police officer in which the courtroom would likely be full of police. The prospective juror's response was that she would generally just "tune them out." Again, this caused the trial court to credit and agree with the prosecutor's expressed fear of some hostility towards police.

In addition to her explanation concerning the characteristics of the challenged prospective juror, circumstantial evidence further supported the prosecutor's explanation. The prospective juror in question was challenged after most of the jurors had been seated. The composition of the jury at that point was two black females, one Hispanic male, one white female, one white male, three Asian females, and one Asian male. This tended to support the trial court's conclusion that the challenge to the prospective juror was not based on race or gender, because if that is what the prosecutor had in mind, she had done quite a poor job of excluding black women prior to the challenged juror.

Against this proffer from the prosecutor, defense counsel could say little other than to rely on the bromide that prosecutors generally favor retired police officers as jurors, that the prospective juror had said she could be fair, and that the prosecutor's reasons for excusing her had not been stated on the record during jury selection. With regard to this last argument, as the trial court pointed out at the reconstruction hearing, it had rejected petitioner's Batson challenge at the *prima facie* level and so had not required the prosecutor to provide race and gender neutral reasons for excusing the prospective juror on the record during jury selection.

A prosecutor's reason for exercising a peremptory challenge does not have to be even close to right. It just has to be non-discriminatory. Trial lawyers, both defense counsel and prosecutors, choose to exercise their peremptory challenges on limited and imperfect

10

information. The fact that colorable arguments can be made both ways as to whether a peremptory challenge was based on discriminatory intent renders unlikely either appellate reversal or, to an event greater extent, the grant of federal habeas corpus review when a trial court has considered those arguments and found the absence of such intent. For as <u>Batson</u> itself, numerous other cases, and the Appellate Division here recognized, a reviewing court "ordinarily should give [the trial court's credibility] findings great deference." 476 U.S. at 98 n. 21; <u>see also</u> <u>Rice</u>, 546 U.S. at 341–42 (even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility," a habeas court should not "supersede the trial court's credibility determination").

      Petitioner's <u>Batson</u> claim is therefore denied.

**II. "Spillover" Effect**

      Petitioner contends that once the Appellate Division vacated his conviction for top counts (first degree assault and assault on a police officer), it should have dismissed or remanded for a new trial the second degree assault count (and perhaps the reckless driving count as well; petitioner is not entirely clear). The argument is difficult to follow. In essence, petitioner contends that because Pagnotta had not been carrying out a "lawful duty" at the time of petitioner's assault on him, as the Appellate Division held, an issue was raised as to whether Pagnotta used "excessive force." Petitioner reasons from there that since the jury might have found that Pagnotta used excessive force, petitioner should have received a "justification defense" instruction (which was not requested at trial), <u>i.e.</u>, that he was justified in speeding off and assaulting Pagnotta because of Pagnotta's use of excessive force against him.

      Putting aside the merits of this claim, I cannot consider it because it was not exhausted in state court, and although in these circumstances it will be deemed exhausted, it is procedurally

barred. Despite extensive briefing from both petitioner's appointed counsel and petitioner *pro se*, the Appellate Division was never asked to vacate the second degree assault or reckless driving charge. Both petitioner and his attorney limited their request for relief to dismissing the top counts, which they obtained, effectively reducing his sentence from twenty years to seven years. Thus, the Appellate Division was never given the opportunity or obligation to resolve this claim. I would be the first court to address it on the merits.

It is axiomatic that claims cannot be presented in a federal habeas corpus petition unless a petitioner has given the state court the opportunity to rule on those claims. Section 2254(b)(1)(A) of Title 28 states that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843–44, 119 S. Ct. 1728, 1732–33 (1999); Rose v. Lundy, 455 U.S. 509, 515, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948"); Daye v. Attorney Gen., 696 F.2d 186, 190–94 (2d Cir. 1982) (en banc).

It is no answer that petitioner attempted to raise this claim for the first time in his motion for leave to appeal to the New York Court of Appeals. It is well settled that presentation of a claim in a discretionary motion for leave to appeal does not exhaust the claim, as the Court of Appeals could deny leave for any number of reasons, including that the claim had not been raised below. "Presenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it." Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000) (citing Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989)). Accord St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004); Johnson v. New York, 851 F.

12

Supp. 2d 713, 721-22 (S.D.N.Y. 2012). The fact that the Court of Appeals might have exercised its discretion to hear a claim that petitioner had not raised below does not mean that petitioner has exhausted that claim where the Court of Appeals chose not to hear it.

The failure to exhaust this claim does not mean that petitioner should be permitted to return to state court and do so, as that would be a futile gesture – petitioner's opportunity to raise this claim with the state courts has passed. Any challenge to the sufficiency of the evidence on the second degree assault or reckless driving claim, or any challenge to the jury instructions on those claims, or, indeed, any claim that the improper submission of the top counts prejudiced him on the bottom counts, would have to have been raised on direct appeal, and cannot be raised in state court now. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals."). When a claim is in that posture, it is deemed exhausted but procedurally barred and cannot be heard on federal habeas corpus review. See Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n. 9, 109 S. Ct. 1038, 1043 n. 9 (1989))). See also Castille, 489 U.S. at 350, 109 S.Ct. at 1059 ("It would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined."); St. Helen, 374 F.3d at 183 ("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's procedurally defaulted claims deemed exhausted where he could no longer obtain state-court review because of his procedural default); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where

they were "procedurally barred for not having been raised in a timely fashion"); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted.").

      Petitioner's only response to this procedural bar is to assert that he could not have challenged the bottom counts until the Appellate Division dismissed the top counts, and thus he had no opportunity to raise this challenge at any time before his motion for leave to appeal. Cf. Taveras v. Smith, 388 F. Supp. 2d 256 (S.D.N.Y. 2005) (where petitioner moved to appoint counsel in the Appellate Division to represent him on direct appeal, and Appellate Division denied motion and dismissed appeal pursuant to fugitive disentitlement doctrine, motion for leave to appeal was adequate to exhaust claim of error), aff'd, 463 F.3d 141 (2d Cir. 2006). That is clearly wrong. The New York courts regularly hear the same "spillover" argument that petitioner makes here, i.e., that infirmities in one count affect other counts and require a new trial as to those counts that are not otherwise challenged. See, e.g., People v. Concepcion, 17 N.Y.3d 192, 929 N.Y.S.2d 541 (2011) (suppression of seized drugs on appeal, resulting in dismissal of drug count, did not require new trial on weapons possession and assault charges); People v. Bulgin, 105 A.D.3d 551, 964 N.Y.S.2d 19, 21 (1st Dep't 2013) (upon vacating one count, court found that "there was no spillover error onto the criminal mischief conviction. There is no reasonable possibility that the contempt count influenced the guilty verdict on the criminal mischief count in any meaningful way."). There is a well-developed body of case law on when New York appellate courts, upon a partial reversal, will also reverse other counts that may have been impacted by the infirmities in the challenged counts. "Whether an error in the proceedings relating to one count requires reversal of convictions on other jointly tried counts . . . can only be resolved on a case-by-case basis, with due regard for the individual facts of the case, the nature

14

of the error and its potential for prejudicial impact on the over-all outcome." People v. Baghai–Kermani, 84 N.Y.2d 525, 532, 620 N.Y.S.2d 313 (1994). "[T]he paramount consideration in assessing" such so-called "spillover error is whether there is a reasonable possibility that the jury's decision to convict on the tainted counts influenced its guilty verdict on the remaining counts in a meaningful way." People v. Doshi, 93 N.Y.2d 499, 505, 693 N.Y.S.2d 87(1999) (internal quotation marks omitted); see also People v. Daly, 14 N.Y.3d 848, 902 N.Y.S.2d 499 (2010). Thus, when petitioner asserts that the Appellate Division "should have decided" whether there was a spillover effect, the simple answer is that he never asked it to, and it is not up to the Appellate Division on direct appeal to raise arguments *sua sponte* on petitioner's behalf.

Not only was petitioner, who was represented by counsel, chargeable with having presented this claim to the Appellate Division first, but it is clear that petitioner in fact knows that he could have raised his derivative challenge to the bottom counts in the Appellate Division for two reasons. First, he uses the term "spillover effect" which is the term repeatedly used by the New York courts to describe this procedural posture. Second, petitioner did, in fact, raise a derivative claim in his appeal to the Appellate Division when he argued in his *pro se* brief that *if* the Appellate Division accepted the prosecutors' argument that his challenges to the top counts were unpreserved (which the District Attorney had raised and which was forcefully argued, but did not succeed), *then* he wanted a finding that his trial counsel was ineffective for not preserving those claims, , i.e., *if* the Appellate Division determined to dismiss the top counts, *then* it should also dismiss the bottom counts because of the spillover effect. Petitioner could have used exactly the same procedure with regard to his spillover argument.

The reason for the exhaustion requirement is that federal courts should not review claims which could have been but were not raised in the court which considered a defendant's direct

15

appeal. Comity requires that a defendant present such claims in the first instance to the state court because if it is a meritorious claim, the state courts may grant relief and avoid the need for what would be unwarranted federal intrusion into the state court criminal process. Petitioner has offered no valid reason why this claim could not have been raised; it is therefore deemed exhausted and procedurally barred.

## CONCLUSION

The petition is denied and the case is dismissed. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). Additionally, any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See 28 U.S.C. § 1915(a) (3); Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

                                                                       U.S.D.J.

Dated: Brooklyn, New York
       December 30, 2013